7 minutes for me. I will be arguing on the jury instruction issue. 7 minutes for Mr. McPherson, who it is my understanding will argue primarily the speedy trial argument, and 7 minutes for Mr. McPherson, who it is my understanding will argue primarily the speedy trial argument, and 6 minutes for rebuttal, which will be handled primarily by Ms. Landau. I would like to start out with stating that the government has characterized the arguments in this case as the defendants arguing in favor of a claim of right defense. I see that as a mischaracterization. I see this case as being about the elements of Hobbs Act extortion, the elements that are, that it is incumbent upon a government to prove beyond a reasonable doubt. And which, in your view, which elements, elements or elements were not proved beyond a reasonable doubt? Wrongful. Oh, the wrongful? So it's kind of the reverse of claim of right, right? Well, Your Honor, it's related to claim of right. It's the claim of, the so-called claim of right defense is, or issue is, is a issue that arose in New York cases and has been discussed in many different cases involving Hobbs Act. So why was it not a wrongful taking, then, in your view? Why was there not an attempt to wrongfully deprive the proceeds, deprive the victim of the proceeds? As to my client, Mr. Trent, he possessed a promissory note in the amount of $78,000, which represented money that he put into the custody or control of Mr. Murdoch as an investment. He had every right to get that money back. And by virtue of having a promissory note... Your argument is that the use of force to collect that debt is not wrongful? Wrong. It is a State issue in this case. I'm sorry? Wrong. It is a State issue. It is a matter of California State law. It is not a Federal case. I don't understand your, that response. He didn't answer the question. He asked, is it wrong to use force to collect a legitimate debt? Yes, it is wrong. As stated in Edmonds, it is a matter of California law, not Federal law. Oh, you're saying it's not wrong as a matter of Federal law to use force to collect a legitimate debt. That's your argument? My argument is I'm not arguing an overarching theory of collecting debt. I'm arguing about this case. I'm arguing that in this case, this is not a Federal case. Are you arguing that there's no connection with interstate commerce between the threat of use of force? I mean, I don't... The interstate commerce argument, Your Honor, is a separate matter. I am not pressing that argument. Let's all stop and you tell us exactly why this is not a violation of Federal law. Absolutely. Look at Edmonds, a Supreme Court of the United States case, which specifically states, in an opinion by Justice Stewart, that rather wrongful has meaning in the act only if it limits the statute's coverage to those instances where the obtaining of the property would itself be wrongful. From what page are you reading? This is 410 U.S. 396 at 400. You're reading page 400? I'm at 400 at the very beginning. All right. And you're... Proceed. Okay. Read what you were about to read. I have the case before me. I was trying to follow you. This is right after N3, which stands for Note 3. Rather, wrongful has meaning in the act only if it limits the statute's coverage to those instances where the obtaining of the property would itself be wrongful, because the alleged extortionist has no lawful claim to that property. Now, I will say something about an Edmonds in anticipation of the government's argument. Edmonds is about a labor dispute. However, if one looks at the language in Edmonds at page 398... I'm not sure if it's a good argument to use violence because a labor union is seeking a legitimate collective bargaining goal, which is just money to the union. Why isn't the use of violence by Trent also legitimate? Is this an equal protection argument? No, Your Honor. This is a statutory construction argument. All right. With respect to statutory construction and so on and statements of the Supreme Court, I will refer to the Court to Cohens v. Virginia, 19 U.S. 264, 1821. Justice Marshall. You have 29 seconds. I'm going to have to go over. Anyway, I will skip that. But I believe, actually, that the U.S. Supreme Court has spoken on this issue. Counsel, assuming we accept your argument, how do you square that argument with the fact that the record reflects that approximately $1.7 million was demanded? So is it your view that the defendants were entitled to $1.7 million? That is not what the record truly stands for. What does the record truly stand for? The record truly stands for the fact that my client, Mr. Trent, had a promissory note for $78,000. That wasn't my question. What was demanded? What amount was demanded? $78,000. And where is that in the record in terms of the evidence that was presented at trial? Testimony by Leslie Murdoch, page 66 of, I believe, January 14th transcript that obtained a. . . What about the wires and the faxes and all of that that had total amounts that were supposed to be. . . With the interest added and the consulting fees and all of that. There's very scant evidence, if that, that Mr. Trent had anything to do with that. Oh, I see. So you're separating your client from the other. Even though he's a co-conspirator, you're trying to separate him out. I am. I'm representing Mr. Trent. Okay. All right. You've used your time. I have one more case to refer to the Court, and that is. . . Briefly. Schindler v. Now, which was decided on 220806 after I filed my opening brief. And in that case, Justice Breyer addresses an issue that arose for the third time in this series of cases. And the question was at page 126, Supreme Court 1264, 1271. Do those words refer to violence, one, that furthers a plan or purpose to affect commerce by robbery or extortion, or to violence, two, that furthers a plan or purpose simply to affect commerce? We believe the former, more restrictive reading of the text. What that case does in a nutshell is it supports our position. Because if, in this case, it is not just a matter of violence that affects interstate commerce that is a violation of the Act, then the term wrongful is rendered meaningless under the government's interpretation. We understand your argument, counsel. Thank you. Thank you. I think we understand. Please, the Court. Donald McPherson on behalf of the Danes. I want to address not the speedy trial this time. I want to address 403 and the firearms. And I want to make a correction to the record because it indicated in my reply brief that the government had misstated. And they've pointed out in the record that, indeed, William Daney, this is William only, not Tariq Daney, told Mr. Stitch that he had brought guns with him. There was nothing further, no elaboration as to how they would be used. However, the government, in response to the Daney's motion under Rule 403 to exclude the firearms evidence, the government had responded, quote, Stitch will also testify that the defendants intended to scare the victims into agreeing to perform a wire transfer of money, end quote. And the government, I don't believe, has any support in the record for that statement. Now. I think there was testimony. I think there was testimony that the defendants wanted to scare. But not with respect to firearms. Oh, I see. You're saying that there was nothing linking the intent to scare with the possession of firearms. That's correct. But moreover, here's the serious problem I have with this firearm evidence, and I want to clarify the facts. Tariq Daney arrives in California in a separate automobile from William Daney on a different day. She comes ahead of William Daney. Tariq Daney has a .50 caliber and a .22 in her vehicle. William Daney has a .38 and a .44 Magnum. Now, there's no discussion with Stitch about firearms that Tariq Daney brought. There's nothing in the record whatsoever. But more importantly, we have a judgment of acquittal. And that language, the reason the court granted judgment of acquittal on count four, and William Daney's the only one that was charged with a firearm charge, charged with possession of the firearm with intent to carry out these other crimes. Well, that count was dismissed for lack of sufficient evidence. The court stating, and his statements are included in the motion in limine, followed by the defendant's pretrial, he says, I've got no evidence here that Mr. Daney intended to use these firearms for carrying out the three, the crimes in counts one, two, and three. Well, how can it be, then, that they're even relevant? The government says, well, they were going to be used with intent to commit the crime. The court had acquitted on that count. More so, as to Tariq Daney, she was never charged with a firearm charge. There was no statement attributable to her with respect to firearms. She's got an evidence against her and, of course, all the defendants on the conspiracy theory, .50 caliber and the .22. So how can it be said that, A, it's relevant, and, B, even if relevant, the prejudice does not outweigh probative value? Now, I realize my task is discretion of the court. That's the standard of review, and that's not an easy task, but it's not insurmountable. And here we've got evidence with much hullabaloo, I call it hullabaloo. That is agents bringing the firearms before the jury and securing the firearms and explaining what a loaded firearm is under California law and displaying this. I think we have your point. You've got 25 seconds, 26 minutes for rebuttal. I'll save some time for rebuttal. Thank you, Your Honor. Was that the only issue you wanted to address? Yes, Your Honor. The issue of the prejudice of the firearms evidence, that was basically what you wanted to address. Right, Your Honor. There's a Supreme Court case decided yesterday on speedy trial, but I'll just advise the court. I don't want to deprive you of an argument that you feel that you should have made. So if there's something else you want to say. Thank you, Your Honor. I'll stand on the brief as to speedy trial, and I think 403 is the most important. All right. Okay. Thank you, Your Honor. All right. We'll hear from the government. Thank you, Your Honor. May it please the court, Jerry Benke on behalf of the United States. The first point that I want to address is an argument that Mr. Trent raised in his reply brief, wherein he pointed out the fact that the government did apparently overlook an issue that he raised in his opening brief. That relates to the jury instructions regarding the effect on interstate commerce. In the briefing, Mr. Trent did argue that the district court erred in instructing on interstate commerce when the district court told the jury that it's not necessary that the government prove that the defendants intended to affect commerce. Government only needs to prove that the conduct would have had some effect on commerce. Here today, he's saying that they aren't really focusing on the interstate commerce aspect. They're focusing more on whether or not it was wrongful. I understand that he made that point in argument today, Your Honor, but the briefing did raise the issue and the government did overlook that issue, so the government did not address it in its reply brief. I just wanted to point out to Your Honors, this morning, as far as that issue goes, in one of the defense proposed instructions, the one that was cited in the government's excerpts of record at page 198, it was the defense that actually requested that language in their proposed instruction. In addition to that, I believe according to United States v. Nelson, this court has held that that language is, in fact, a correct statement of the law. Moving on to the argument concerning the Edmunds decision and whether or not the government failed in proving that the defendant's conduct in this case was wrongful, the government, as stated in its brief, disagrees with the defendant's position. The government does believe that the element of wrongfulness was established in this case because it was shown that the defendants intended to use force or fear of force or violence in order to induce Mr. Murdoch to give money over to the defendants. Well, what about opposing counsel's argument that there was a particularly regarding Mr. And, therefore, his client was entitled to the money, and based on the language in Edmunds, that because he had a legitimate claim, there was no federal crime? The government, in the first place, the government doesn't dispute that the defendants may have had some legitimate claim to some of the money that the government believes they were going to attempt to extort from Mr. Murdoch. But, as Your Honor pointed out earlier, the government believes there was evidence from which the jury could find that the defendants were looking for more than just the initial investment, as Mr. Trent is arguing. Are you conceding the point that if Trent was legitimately owed $78,000, Trent could use violent force and the threat of violent force to molt the $78,000 out of Murdoch? No, Your Honor, that's the next point of my position, which is that even if the defendants did have some entitlement to some of the property that they were seeking, as the saying goes, you can't beat somebody up to collect a debt. Well, what about the language he read from Inman's, which says, wrongful has meaning in the act only if it limits the statute's coverage to those instances where the obtaining of the property would itself be wrongful because the alleged extortionist has no lawful claim to that property. What do you do with that language? That language, Your Honor, was uttered by the Supreme Court in the context of determining whether such a claim of right issue exists in the context of a labor management dispute. And when you look at facts similar to those before us, which involve situations other than a labor management dispute, every other circuit that has addressed the issue has limited that language in Edman's to the labor management context. Does it mean that the labor thugs can go and threaten an employer to get him to recognize the union? Recognition of the unions of a legitimate labor issue. So they can just send a bunch of beefy guys over there and threaten them, beat them up. According to Edman's, there are circumstances where labor at least can avoid federal prosecution, even when they use force or violence, to seek legitimate union objectives. I think the issue in Your Honor's hypothetical would be whether recognizing the union is a legitimate union objective, and I don't know the answer to that question. But in Edman's, they used force. I believe in Edman's the force was using rifles to shoot out power transformers during the course of a strike where they were seeking higher wages. The government also believes that to some extent the language cited by defense from the Supreme Court is incorrect. The language related to wrongful doesn't lose all meaning if the defendants didn't have, or if the defendants did have rather, a claim of right to the property they were seeking. I think this case provides a prime example of that. If you look to the discussion concerning the jury instructions in this case, the defense requested a self-defense instruction. The court gave a self-defense instruction, and the reason for that was the defense argued that they believed that the use of force that occurred in this case was not wrongful because it was done in self-defense. So the government believes that having the language wrongful force or violence doesn't render the term wrongful surplusage if the defendants did not have a claim of right to the property they were seeking. In addition, the case Scheidler v. Now, which was cited by the defense, the government does not believe is applicable to this case. In Scheidler v. Now, the issue before the Supreme Court and the issue that was resolved by the Supreme Court concerned what the definition of property is for the purposes of the taking required by a Hobbs Act extortion. So the language there didn't have anything at all to do, or excuse me, that decision didn't have anything at all to do with whether or not the defendants had a claim of right to the property that they were seeking. On the 403 issue that was argued by the defense regarding the firearms, one point that I wanted to clarify regarding the reply brief was that in the reply brief, the defense argued that the government made false claims or relied on false expectations when it represented the expected testimony from the cooperator to the district court during the motion in limine. Since that was made in the reply brief, the record does not contain it, but I can represent to the court that the representations made in the motion in limine  Yes, Your Honor. And in addition, as counsel pointed out, some of the representations that were cited in the reply brief, Mr. Stitch did actually testify to, specifically that William Daney told Mr. Stitch that he had brought firearms with him. Address the point that was made by Mr. McPherson that if the jury, if the judge granted a Rule 29 motion as to count number four, saying that there was no evidence that William Daney intended to use the guns to further the extortion or violence. If that's so, what relevance do the guns have in the case? The relevance that the firearms had to the case were to demonstrate the defendant's intent. And the defense argument misses the point, really, because the Rule 29 motion was granted at the conclusion of the first trial. The significant difference between the first trial and the second trial is that Mr. Stitch, the cooperator, testified at the second trial. He did not testify at the first trial. That answers my question. And his testimony was at the second trial? Yes, Your Honor. The key testimony from Mr. Stitch at the second trial related to the firearms was one that Mr. Daney said that he brought firearms with him. But more importantly, the testimony by Mr. Stitch regarding the sequence of events on the date that this happened. Mr. Stitch testified that when they found Mr. Murdoch's car and then saw or received a report, at least, that Mr. Murdoch was leaving the law offices, that at that point, Mr. Daney drove to where Mrs. Daney's vehicle was parked, got out, ran to Mrs. Daney's truck, pulled the gun case out of the truck, brought that back and dropped the gun case onto Stitch's lap. But, Mr. Benke, if there was a Rule 29 motion granted as to William Dane's intention to use the guns for extortion in the first case, doesn't that become res judicata under our recent Ogles case? And doesn't that mean that he would be placed in double jeopardy by testimony at the second trial that he intended to use the guns to extort? I don't believe so, Your Honor. Your Honor would be correct if the government sought to try Mr. Daney again for the 924C at the second trial. The government did not do that. At the second trial, the government introduced the evidence of the firearms as evidence of the defendant's intent on the remaining counts, which would be the conspiracy and the attempted extortion. Not intent to use the guns, but simply intent to commit the extortion. Is that the idea? The defendant's intent to use fear or force in committing the extortion. Well, isn't that the same as using guns in commission of the extortion? I mean, I don't see the difference. If in the first trial he's found there's no evidence that he used the guns to commit extortion, then in the second trial he's not charged on that count. The evidence comes in that the guns were there to show his intent to commit extortion. Isn't that the same, the other side of the same coin? How can he not have intended to use the guns as granted the Rule 29 motion establishes, right? And then had the guns show some intent to commit extortion? I don't follow. Well, I don't know. I may be misunderstanding Your Honor's question. I think that the purpose for the evidence in both trials regarding the intent of the defendants was the same. Its relevance regarding the issue of intent was the same. I think Your Honor's correct about that. I think that your argument is, correct me if I'm wrong, but there's a difference between proof beyond a reasonable doubt and relevance, which just has some tendency to make a fact more likely to occur than not. Yes, Your Honor. That is correct. In a related context, I believe this Court, although I don't have a case off the top of my head to cite, but I believe this Court has held in a related context that in the 404B arena, even if a defendant had been acquitted of the prior act that the government wants to introduce under 404B, that that doesn't automatically preclude its admission because, as Your Honor points out, there is a difference between proof beyond a reasonable doubt and the level of proof necessary to make a piece of evidence relevant. Here, in the second trial, the defendant was not charged with using the firearms. The government introduced the firearms as relevant evidence to prove his intent to commit the extortion, and the government does not believe that the concept of res judicata, based on the earlier Rule 29 motion, prevents the government from using that evidence. The government does believe that the evidence was sufficient to establish that he used the guns, certainly in light of the testimony from the cooperator that the trial court did not have before it at the first trial when it granted the Rule 29 motion. The evidence, the government believes, was sufficient to make a threshold relevance finding that the defendant possessed the guns and that the defendant intended to use the guns in some fashion in committing the extortion and that that was relevant to show their intent. I also, even though it hasn't been argued yet, I just wanted to touch briefly upon the speedy trial issue as well. The government believes that there are four separate grounds upon which this court could affirm the district court's denial of the defense motion to dismiss on speedy trial grounds. Three of those relate to pleadings that were filed by the defense that the government believes provide for automatic exclusion of time, and the fourth ground is the district court's excludable time order itself, which, although it was entered a few days after the expiration of the 70 days, under the analysis of this court in Shetty, the government believes that this court could affirm the denial of the motion to dismiss based on the excludable time findings that the district court entered. Each one of the pleadings that the government cited in its answering brief would result in enough excludable days to get past the August 7th date. So even if the court were to not rely upon the excludable time findings, given that there were three applications, I think they were titled, pending before the court during the relevant time period, and each one of those applications alone would provide for sufficient excludable time, the government believes that the district court's ruling on the speedy trial issue should be affirmed. And on the Shetty issue, the government believes that the excludable time findings themselves are sufficient to justify the delay in light of the fact that the defendants in this case have never relied upon their speedy trial rights. As a matter of fact, in terms of the sequence of events in this case, the defense filed a motion to dismiss claiming a violation of their speedy trial rights, and then I believe it was a week or two after that, filed yet another motion to continue. The defense has never contested at all the excludable time findings themselves. In fact, they stipulated to those findings, and now we're simply trying to rely on the timing of the submission of the order as a basis to dismiss the indictment. And the government believes that under Shetty, this court could affirm based on the district court's excludable time findings. Unless the court has any additional questions, I don't have any other points. Thank you. It appears not. Thank you, Your Honor. All right, rebuttal. I'm going to save one minute of my time for Mr. Lathrop. That's fine. Each of the counsel can have a minute for rebuttal, so you don't have to worry about rushing. Well, as you know, difficult to talk with that on. I came late to the party in this case. But I did want to address primarily, pretty much exclusively, the issue about the jury instruction on mens rea under the Hobbs Act. I wanted to make a couple of points. First of all, we're not arguing, or at least I'm not arguing on behalf of Mr. Arnn and to the extent that the other defendants have joined my argument, we're not arguing that the evidence was insufficient or that the government could not have proved its case. The question before the court is whether the jury instruction, which the district court modified from the Ninth Circuit pattern instruction, was adequate. The question of intent, the ultimate question of intent, is a factual one for the jury. And the jury instruction, of course, provided that the jury could make a finding that the defendant's intent was wrongful if they found that the defendants either attempted, you know, the usual laundry list, attempted or intended to use force or threat of force. And the problem with that is that turns on the statutory construction of the Hobbs Act, which essentially renders the term wrongful, meaningless, or redundant because, as the Supreme Court pointed out in Edmonds, all force or threat of force is wrongful. And so that's the first problem. The second problem that we have in this case is that the jury instruction is not adequate.   And so I'm going to ask you to explain to me what the jury instruction has read in your view. And was that instruction proffered? Yes. Well, first of all, the instruction that would have been adequate is the pattern instruction, and it's quoted in my brief. And that's the one that you proffered? Yes. It's 8.117. It was requested. I cannot give you a record cite off the top of my head, but it is cited in the brief. In fact, the question of wrongfulness and what was loosely referred to as a claimant's right, which I think is somewhat of a misnomer, because the term – anyway, I do think it's somewhat of a misnomer, but this whole discussion occurred over several pages and it came up a couple of different times during the jury instruction conference. The entire jury instruction conference is included in Mr. Arnn's excerpts of record. And the – but Mr. Rowland, who was Mr. Arnn's attorney below, did specifically request the pattern instruction. And as I said, there was a discussion about a claim of right defense. But claim of right is not really – we're not talking about an affirmative defense here. What is really at issue before the Court and what was requested below was the Ninth Circuit and pattern instruction defining intent. And that pattern instruction includes – I don't know if I can find this. Sotomayor Well, the government gave an intent instruction. Harrington Right. But just a general intent instruction on – which had no relation to property or the specific crime. There was a general intent instruction on, you know, knowingly and willfully, the standard instruction. But the instruction that was requested said, second, the defendant acted with the That's the claim of right. Harrington But it's not an affirmative defense, and I want to clarify that. Sotomayor Right. I know. I'm just saying that you're asking for an instruction that incorporated the claim of right. Harrington Yes, that's correct. That's correct. The second point is, Judge Rawlinson, you brought up the issue of whether the defendants were demanding more than they were entitled to. Again, that's a factual question, which would have been fair for the jury to resolve. But in any event, there was very little evidence that, in fact, the defendants were seeking any more than what they were entitled to. The government relied on a spreadsheet, which was prepared by my client, and it did total up to about $1 million, I think. But first of all – well, to begin with, the spreadsheet was on behalf of this quote-unquote group of investors, which defendants – Sotomayor The New England group or something. Harrington The New England group. That's right. And some of those people actually testified at trial on behalf of the defense and testified that they had authorized Terry Daney and my client to try to seek recovery for them. So at a minimum, there was a significant question of fact for the jury to resolve regarding whether the defendant's intention was wrongful. All of that evidence went to the jury. All of it went to the jury. But there was no instruction that told the jury how to evaluate it. The instruction did not allow for the jury to consider whether the defendant may not have had the intent needed to violate the Hobbs Act because they had a legitimate claim to the money. And they, in fact, had a legitimate claim to the money. All of the defendants were defrauded of significant amounts by the – by Mr. Murdoch, and there was no dispute about that. He admitted it. Kennedy Is it your point that as long as they were really owed money, they could threaten violence? Harrington I think the question is – no, I'm not saying that that's a legitimate thing to do, and I want to make that clear. But I think the question is whether that qualifies them for conviction under the Hobbs Act. I think that's the important point here. The Hobbs Act is a Federal statute, and while it has a broad reach, it is not unlimited. It has a limit that's a very de minimis interstate commerce requirement, and it's limited by the – what really limits it is the defendant's intent. And the Supreme Court, in the only case that the Supreme Court has decided on this particular part of the statute, has defined wrongful in a way that goes to the defendant's intent vis-à-vis the property, not vis-à-vis their threat or use of force. Kennedy That's Edmonds. Harrington That's Edmonds. And the property language was kind of an aside. It really – the point was the use of force to achieve legitimate labor goals is not a violation of the Hobbs Act. Well, that is – that is how the Second and the Third Circuits have interpreted it, but that – I do not think that that is – I mean, that – first of all, that is a very restrictive reading of a Supreme Court case, which is a somewhat risky strategy. Many courts consider that a risky strategy. Second of all, while we have this – the Ninth Circuit has consistently, consistently in the – and there are only a couple of cases, Agawam and Dishner, but both of those cases talk about the importance of instructing on the defendant's intent, and they talk about the significance of – and, in fact, in Dishner, one of the reasons that the instructions were adequate was because the jury was instructed that the defendant's intent regarding property had to be wrongful. Now, I will concede that that was not a case apparently involving violence, but it is still the only – the leading Ninth Circuit case on the subject. I understand your argument, counsel. All right. Thank you. You've exceeded your time. Okay. Thank you. Did you have one parting thought? I just had one – just wanted to mention on the speedy trial issue that the government addressed. To the extent that the government is arguing Shetty, that may have been somewhat undermined by the Supreme Court's decision in Zedner just the other day. All right. Thank you, counsel. All right. We'll give one minute for rebuttal for each of – each counsel. Thank you, Your Honor. Steve Latham on behalf of Mr. Miller. If we step back and look at the Count II attempt, attempted extortion, Mr. Miller was found not guilty of Count II. He was found not guilty of Count III. He was acquitted of all the underlying substance of offenses. He was only convicted of conspiracy. And the – beyond the inconsistent verdict issue that that gives rise to, because the jury was specifically instructed, pursuant to Pinkerton, and the government has not addressed this in their argument, that sufficient evidence does support the verdict with respect to Mr. Miller. But the jury was specifically instructed that it should return – it must return a verdict of guilty against appellant for all substance of offenses committed by the co-conspirators, that person's co-conspirators, that were committed in furtherance of the conspiracy. But we don't know why the jury – you never know why a jury gives the verdict it gives. It could be a compromised verdict. It could be a nullification. It could be any number of things. So what are we to read? What are we supposed to do with that? In all due respect, Your Honor, I think that under the de novo review, because there was a motion to dismiss for insufficiency of the evidence here under this court. Right. Under the de novo review, if the Court looks at Mr. Miller, who had never been convicted, had any – prior to this, any involvement with law enforcement, upstanding citizen, lives in Chicago. But our task is – our task is to determine whether or not there is sufficient evidence to support the count of which he was convicted. That's correct. And if you look at the – if you look at the evidence, all of the – this discussion about what to do – Mr. Miller comes in at the very last minute. He's in a hotel room with the other defendants when Stitch says – you know, is asking people, are you in on this? Whatever it is. I guess, you know, in on – Well, why was he there? Why was he in the parking lot in Pasadena? Well, he was owed – well, he was – he had to secure his promissory note, the money that he was owed. He had to – and the lawyer advised him – he had to obtain a – he had to serve an affidavit, rather, on Mr. Murdoch. So he was legitimately there to serve an affidavit. And the government can't – I mean, that's – those are the facts. But the jury heard all of that. The jury heard his version and convicted him on count one. But – And if we view the evidence in the light most favorable to the government, it's reasonable to conclude he was part of the conspiracy. But in count two, he was acquitted of attempted extortion, which is – which means the jury found – and this is another important point, which some of the other counsel may have. He didn't do any acts of attempted extortion, but he was a conspirator to the extortion that was done. But the attempted extortion requires a specific intent to commit an extortion. And the jury found he didn't have that specific intent to commit the extortion, but he conspired with others to do it. That's not inconsistent. Well, given the picketing charge, I believe it is, Your Honor, because – We understand your argument. Do you have something else? I'll submit – no, I'll submit. All right, thank you. Anyone else on rebuttal? Your Honor, we do have, and I stated in my brief, race, judicata, collateral, estoppel, and double jeopardy. And even assuming, for sake of argument, the government's correct that – and I think it's a non sequitur to say, oh, he's acquitted as to intent, but now it's relevant again. But even if it's relevant, we still come back to prejudice outweighs probative value. And especially when you turn to Tariq, there's no evidence whatsoever that she intended to use guns for any purpose, and they introduce a .50 caliber handgun, which I don't know how many inches it is, but when they hold that up in front of the jury, that cries out for reversal under Rule 403. They fail to point out what the court indicated, and it's attached – it's part of the motion for – under Rule 403, and it's docket number 393, and it begins at page 2. It's not in the excerpt of the record, but it's a motion in the record. And the defendants quote exactly what the court said as to Bill Daney and why Bill Daney was acquitted. And it wasn't some close call as to reasonable doubt. He talks about how Bill Daney had firearms all of his life. He used them in the Army. He was on this rifle – expert rifle team. He was an avid hunter, and he had absolutely no intention of using those. He had every opportunity to use them. During that scuffle, he could have walked over to the car, picked out a firearm, and used it. And the court points all this out. So this isn't some close case of, well, no proof beyond a reasonable doubt. This is a clear finding by the court that these guns, these firearms, have absolutely nothing to do with this case. What about the government response that that was the first trial, and it was done without benefit of the testimony of the cooperating defendant, which put it more in perspective in terms of the relevance? Well, it doesn't help the government on – if I'm correct on ratio to collateral estoppel and double jeopardy, it doesn't help the government at all as to Bill Daney. And even if it – If he's not being tried for that, then it's not race judicata. Race judicata bars a retrial of that issue. This is not a race judicata issue. This is an admissibility of evidence issue, which is a totally different issue than race judicata. He's not being tried. He's not being tried for the gun. But the reason it's admissible, the government says, is because it shows intent. But race judicata says intense foreclose. No, race judicata says you can't be tried for it again. Well, I think we have collateral estoppel risk. What case authority are you relying upon to support your argument if there's a Rule 29 motion granted, then no evidence can be admitted that was at issue in that case? I have not found it. To date, I have not found a case directly on point. All right. Thank you, counsel. Thank you to both counsel. The case is argued and submitted. Oh, I'm sorry. I'm sorry. Thank you. Your Honor, may I just have one last sentence here? Yes, please. It still doesn't solve the problem as to Taree Dainey because. I understand. All right. This is a real minute, Your Honor. Judge Rollinson requested record references for the request for the Ninth Circuit instruction. That is at the Trent ER 44-47. ER what now? The Trent excerpts of records. Oh, Trent. Uh-huh. 44-47. And also, with all due respect, Mr. Bankey was discussing NOW 2, Roman numeral 2. I was discussing NOW 3, which is the latest Shidler v. NOW case. Oh, okay. That came out on 22606. Thank you. All right. Thank you. Thank you to all counsel for your argument in a challenging case. The case is argued and submitted for decision by the Court. This Court is in recess until 9 o'clock a.m. tomorrow morning. Thank you. Thank you. Thank you.
judges: D.W. Nelson, Rawlinson, Bea